UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
TODD KREISLER,

                             Plaintiff,

        -against-

KOSCAL 59 LLC and
PERITO RESTAURANT CORP.,



                           Defendants.
----------------------------------------------------------------x

**Civil Case No: 1:26-cv-2111**

**COMPLAINT**



**JURY TRIAL REQUESTED**

## COMPLAINT

Plaintiff, Todd Kreisler ("Plaintiff"), by and through his counsel, Hanski Partners LLC, hereby files this Complaint against Koscal 59 LLC ("Landlord Defendant") and Perito Restaurant Corp ("Tenant Defendant" and collectively with Landlord Defendant, "Defendants"), and alleges upon information and belief as follows:

## INTRODUCTION

1. Plaintiff is an individual with a disability who requires a wheelchair for mobility.

2. Defendants own, operate, and lease a place of public accommodation, a casual restaurant located at 1079 1st Avenue in Manhattan, NY known as Tramway Diner.

3. Due to Defendants' discriminatory actions, Tramway Diner is not readily accessible to and usable by individuals with disabilities that use wheelchairs ("accessible").

4. Tramway Diner is not accessible because Defendants created and maintain it with architectural elements that function as barriers to wheelchair access ("architectural barriers").

5. By creating and maintaining architectural barriers at Tramway Diner, Defendants denied, and continue to deny, Plaintiff full and equal enjoyment of the restaurant's goods, services, facilities, privileges, advantages, and accommodations ("equivalent access") based on disability.

6.  Plaintiff resides approximately 15 - 20 minutes from Tramway Diner.

7.  Plaintiff passed by Tramway Diner's location at least 4 times during the 2024 calendar year.

8.  Plaintiff passed by Tramway Diner's location at least 4 times during the 2025 calendar year.

9.  Plaintiff has patronized Tramway Diner multiple times, as he enjoys the food served at the restaurant.

10. Plaintiff has dined inside Tramway Diner, and Plaintiff has also had Tramway Diner's food delivered to him.

11. However, when Plaintiff dined inside Tramway Diner he was denied equivalent access due to the architectural barriers at Tramway Diner.

12. Plaintiff encountered architectural barriers at the exterior of Tramway Diner; for example, a change in level greater than .5 inch at the public entrance that is not treated with an accessible ramp, and the lack of wheelchair maneuvering clearance at the public entrance doorway.

13. The exterior architectural barriers make it difficult for Plaintiff to operate the public entrance door and to safely and independently enter Tramway Diner.

14. Plaintiff also encountered architectural barriers inside Tramway Diner; for instance, restrooms that are too small for a person in a wheelchair to enter and use.

15. By creating and maintaining architectural barriers at Tramway Diner, Defendants denied Plaintiff equivalent access to Tramway Diner.

16. Defendants discriminate against Plaintiff in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et seq.* and its implementing regulations; the New

York Human Rights Law ("State HRL"), Article 15 of the New York Executive Law; the New York Civil Rights Law ("CRL"), § 40 *et seq.;* and the New York City Human Rights Law ("City HRL"), Title 8 of the Administrative Code of the City of New York.

17. Plaintiff files this Complaint against Defendants so they will cease discriminating against him in violation of the ADA, State HRL, CRL, and City HRL (collectively, the "Human Rights Laws").

18. Plaintiff seeks equitable, injunctive, and declaratory relief together with attorneys' fees, costs, and expenses pursuant to the Human Rights Laws.

19. Plaintiff also seeks civil penalties from Defendants pursuant to the CRL, and monetary damages from Defendants pursuant to the State HRL and the City HRL.

## JURISDICTION & VENUE

20. This Court is vested with jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 and §1343 because this is an action for declaratory and injunctive relief pursuant to the ADA.

21. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because the events giving rise to this action occurred in the State of New York, County of New York; specifically, at the real property and the building thereon with the street address of 1079 1st Avenue, New York, NY 10022 ("1079 1st Ave") in which the Tramway Diner is located.

22. This Court has supplemental jurisdiction over Plaintiff's State HRL and City HRL claims pursuant to 28 U.S.C. § 1367(a) as they are related to his claims arising under the ADA.

## FACTS COMMON TO ALL CAUSES OF ACTION

*The Parties and the Place*

23. Plaintiff is a resident of the State and City of New York.

24. Plaintiff suffers from a physical condition that renders him unable to walk using his musculoskeletal system, and which restricts Plaintiff's body motion range and movement.

25. Unable to walk on his own, Plaintiff uses a wheelchair to move about.

26. Landlord Defendant, a domestic limited liability company, is a private (non-governmental) entity.

27. Landlord Defendant conducts business within the State of New York, including at 1079 1st Ave.

28. Landlord Defendant owns and operates 1079 1st Ave.

29. Landlord Defendant leases space within 1079 1st Ave to Tenant Defendant for use and occupancy as an eating and drinking establishment.

30. The space Landlord Defendant leases to Tenant Defendant is located on the ground floor of 1079 1st Ave.

31. Tenant Defendant, a domestic busines corporation, is a private (non-governmental) entity.

32. Tenant Defendant conducts business within the State of New York, including at 1079 1st Ave.

33. Tenant Defendant leases space at 1079 1st Ave from Landlord Defendant for use and occupancy as an eating and drinking establishment.

34. Tenant Defendant owns and operates Tramway Diner, a casual restaurant that specializes in American comfort food such as sandwiches and burgers in the space it leases from Landlord Defendant at 1079 1st Ave.

35. Tramway Diner is located in the upper east side neighborhood of Manhattan.

***Past Injury from Plaintiff's Personal Encounters with Architectural Barriers***

4

36. During the 2025 and 2026 calendar year Plaintiff wanted to dine inside Tramway Diner as he likes its food and he enjoys dining out at restaurants.

37. However, Plaintiff was deterred from dining at Tramway Diner due to the architectural barriers he personally encountered at Tramway Diner.

38. The architectural barriers Plaintiff personally encountered at Tramway Diner included those at the exterior of the public entrance such as a ramp without a proper top landing, and an entrance door without a level maneuvering clearance needed by Plaintiff, as a wheelchair user, to safely and independently operate the door.

39. The exterior architectural barriers make it difficult for Plaintiff to safely and independently operate the public entrance door and enter Tramway Diner.

40. Plaintiff was also deterred from dining at Tramway Diner due to the architectural barriers inside Tramway Diner; for instance, restrooms that are not usable by him as a wheelchair user due to their size, and lack of required accessible elements such as grab bars.

41. Plaintiff was deterred from dining at Tramway Diner due to the interior barriers as it is distressing to him to that should he require use of the restroom, none are available to him due to his use of a wheelchair.

42. The architectural barriers Plaintiff encountered made Tramway Diner inaccessible to him as a wheelchair user, denying him equivalent access based on disability.

43. Defendants created and maintain the architectural barriers at Tramway Diner.

44. Defendants denied Plaintiff the opportunity to patronize Tramway Diner by creating and maintaining architectural barriers to Tramway Diner.

45. Defendants denied Plaintiff equivalent access through the architectural barriers they created and maintain at Tramway Diner.

46. Plaintiff suffered a direct injury from Defendants' conduct from his personal encounters with architectural barriers at Tramway Diner.

47. During the 2025 and 2026 calendar year, to date, Plaintiff has desired to dine at Tramway Diner at least 5 times.

48. However, each time Plaintiff has gone by Tramway Diner he has seen that the architectural barriers at the public entrance continue to exist.

49. Plaintiff is also deterred by the architectural barriers inside Tramway Diner as he is aware that they continue to exist and because he was informed by a representative of Tenant Defendant, that they will not remediate the interior barriers to make them accessible.

50. Although Plaintiff desired to dine at Tramway Diner in the 2025 and 2026 calendar years, Plaintiff was deterred from patronizing Tramway Diner due to the architectural barriers he prevously encountered.

### Plaintiff's Ongoing Connection to Tramway Diner

51. Plaintiff resides 15 – 20 minutes travel time from Tramway Diner.

52. Plaintiff is in Tramway Diner's immediate vicinity more than 4 times a year as part of his typical life activities.

53. Plaintiff patronizes casual restaurants similar to Tramway Diner that are accessible to him.

54. Plaintiff patronizes restaurants at least 10 times a year.

55. Casual food such as sandwiches and burgers are among the cuisines that Plaintiff enjoys.

### Ongoing Injury – Detterant Injury Due to Architectural Barriers

56. Plaintiff continues to desire to dine at Tramway Diner.

57. Defendants, however, deny Plaintiff the opportunity to do so as they created and continue

to maintain architectural barriers at Tramway Diner.

58. Defendants deter Plaintiff from patronizing Tramway Diner through their continued maintenance of architectural barrers at Tramway Diner.

59. Plaintiff is aware that there are architectural barriers at Tramway Diner that deny him equivalent access to Tramway Diner.

60. The architectural barriers Plaintiff is aware of include the exterior and interior architectural barriers Plaintiff previously encountered, and the additional interior architectural barriers identified in this Complaint.

61. Plaintiff continues to be deterred from patronizing Tramway Diner as he is aware that architectural barriers at Tramway Diner that deny him equivalent access continue to exist.

62. Defendants cause Plaintiff to suffer an ongoing injury by maintaining architectural barriers at Tramway Diner.

63. Defendants refuse to remove the architectural barriers at Tramway Diner that deny Plaintiff equivalent access, inclusive of the architectural barriers at the public entrance and inside Tramway Diner. that deny Plaintiff the opportunity to enter Tramway Diner.

64. But for the architectural barriers Plaintiff would patronize Tramway Diner as a dine-in customer.

65. After the architectural barriers are removed, Plaintiff will patronize Tramway Diner as a dine-in customer

66. By maintaining architectural barriers at Tramway Diner, Defendants deny Plaintiff equivalent access to Tramway Diner due to disability and continue to discriminate against Plaintiff in violation of the Human Rights Laws.

67. Plaintiff continues to be deterred from dining at Tramway Diner because he is personally

aware that the architectural barriers at Tramway Diner deny him the opportunity to have equivalent access to Tramway Diner.

68. Defendants continue to maintain the architectural barriers at Tramway Diner, those that Plaintiff personally encountered, and those that Plaintiff learned of after he visited Tramway Diner.

69. Defendants cause Plaintiff to suffer an ongoing injury as they continue to deter Plaintiff from visiting Tramway Diner by maintaining these architectural barriers.

***Alterations were performed to Buildout Tramway Diner at 1079 1st Ave***

70. 1079 1st Ave was constructed prior to January 26, 1993.

71. However, at various times after January 26, 1992, the space Tramway Diner occupies and uses at 1079 1st Ave was remodeled, renovated, and reconstructed in a manner that affected or could have affected the way the space, or part of the space, is used (i.e., "Altered").

72. During the 1993 calendar year a new storefront was installed in the space Tramway Diner occupies, work was performed to the commercial kitchen, and the internal areas of the space were partitioned into separate rooms and areas.

73. Thereafter, in the 2015/2016 calendar years Tramway Diner's space was Altered when physical construction work was performed to renovate Tramway Diner's space.

74. As part of the renovation construction work was performed to the dining room and the restrooms.

75. The 2015/2016 renovations to the dining room included the installation of a bar with dining counters. The 2015/2016 renovations to the restrooms included the installation of new flooring, and the removal and replacement of plumbing fixtures.

76. In addition, as part of the 2015/2016 renovations, work was performed to upgrade the

8

commercial kitchen in the space.

77. However, Tramway Diner's space was Altered without providing for the minimum required physical accessibility necessary for disabled individuals that use wheelchairs to have equivalent access to Tramway Diner.

78. Therefore, although Altered, Tramway Diner's physical space is not accessible.

79. Tramway Diner is a place of public accommodation as defined by the ADA, State HRL, CRL, and City HRL, because it is a restaurant.

80. As a place of public accommodation, Tramway Diner is required to be accessible pursuant to the ADA, State HRL, and City HRL as a non-accessible place of public accommodation does not provide equivalent access to persons such as Plaintiff, a disabled individual that uses a wheelchair.

81. To comply with the ADA, CRL, State HRL, and City HRL, Landlord Defendant, the property owner and lessor of a place of public accommodation, is required to provide Plaintiff, as a disabled individual, equivalent access to Tramway Diner.

82. To comply with the ADA, CRL, State HRL, and City HRL, Tenant Defendant, the lessee and owner/operator of a place of public accommodation, is required to provide Plaintiff, as a disabled individual, equivalent access to Tramway Diner.

83. The ADA, CRL, State HRL, and City HRL prohibits the property owner, lessor, and lessee of a place of public accommodation, as well as the operator and owner of the place of public accommodation (each a "public accommodation", and a/k/a a "covered entity"[1]) from discriminating based on disability with respect to the place of public accommodation. ADA, 42 U.S.C. § 12181 and 28 C.F.R. § 36.104; State HRL, Executive Law § 296(2)(a); N.Y. Civil

---

[1] A "covered entity" is a person required to comply with section 8-107 of the City HRL the section which prohibits unlawful discriminatory practices. N.Y.C Admin. Code § 8-102.

Rights Law §§ 40 and 40-c, and the City HRL, N.Y.C Admin. Code § 8-102.

84. Each Defendant is a public accommodation: Landlord Defendant is a public accommodation as it owns and leases the physical space within 1079 1st Ave in which Tramway Diner is located; Tenant Defendant is a public accommodation as it owns and operates Tramway Diner and leases the space in which Tramway Diner is located from Landlord Defendant.

85. The ADA, State HRL, and City HRL impose joint and several liability on the owner, lessor, and lessee of the location in which a place of public accommodation is located, as well as upon the operator and owner of the place of public accommodation.

86. Each Defendant is vicariously liable for the discriminatory acts and omissions of their employees and agents.

87. Pursuant to the Human Rights Laws, Tramway Diner, an Altered place of public accommodation is required to be readily accessible to and usable by disabled individuals that use wheelchairs.

88. Defendants' failure to comply with the ADA, State HRL, and City HRL infringes upon Plaintiff's rights to be free from discrimination based on disability.

89. Defendants offer ambulatory individuals the opportunity to enter Tramway Diner safely and independently through a public entrance suitable for ambulatory individuals, but deny Plaintiff this opportunity due to disability, as the public entrance is not wheelchair accessible.

90. Defendants offer ambulatory individuals the opportunity to dine within Tramway Diner and provide ambulatory patrons use of the restaurant's facilities and accommodations, including the restaurant's counter and booth dining surfaces and restrooms. However Defendants deny Plaintiff this opportunity based on disability as the dining surface and restrooms are not wheelchair accessible.

91. By denying Plaintiff equivalent access to Tramway Diners through their maintenance of architectural barriers, Defendants unlawfully discriminate against Plaintiff based on disability.

92. To the extent Defendants assert that they do not deny Plaintiff equivalent access to Tramway Diner as they can assist Plaintiff in overcoming the architectural barriers that deny him safe independent entry into Tramway Diner, Defendants' demand that Plaintiff seek assistance to enter Tramway Diner, instead of providing the required wheelchair access is unlawful discrimination in violation of the Human Rights Laws.

93. Defendants provide ambulatory individuals the opportunity to independently enter Tramway Diner but deny Plaintiff this opportunity based on disability.

94. Any demand by Defendants that Plaintiff request assistance to enter Tramway Diner instead of providing a means of independent access to Tramway Diner is unlawful discrimination against Plaintiff based on disability.

95. Plaintiff intends to visit Tramway Diner and dine there again after the architectural barriers are removed and Tramway Diner is made readily accessible and usable as required by the ADA, State HRL, and City HRL.

96. Architectural barriers which Plaintiff encountered include, but are not limited to, the following violations of the ADA Standards[2] and the NYC Standards[3] (together the

---

[2] "ADA Standards" means to (i) the 1991 ADA Standards for Accessible Design codified in 28 CFR part 36 Appendix A (the "1991 ADA Standards" or "1991 ADA"); and (ii) the 2010 Standards for Accessible Design codified in 36 CFR part 1191 Appendices B and D, and 28 CFR part 36 Appendix A, subpart D (the "2010 ADA Standards" or "2010 ADA").
[3] NYC Standards" means (i) the accessibility provisions of the 1968 New York City Building Code, N.Y.C. Admin. Code § 27-292.1 *et seq*. (the "1968 BC"), inclusive of the technical standard for accessibility referenced in the 1968 BC, ANSI A117.1-1986 as modified by 1968 BC Reference Standard RS 4-6 (the "1968 Ref Std"); (ii) the accessibility provisions of the 2008 New York City Building Code, N.Y.C. Admin. Code § 28-1101 *et seq*. and Appendix E (the "2008 BC"), inclusive of the technical standard for accessibility referenced in the 2008 BC, ICC A117.1-2003 (the "2008 Ref Std"); (iii) the accessibility provisions of the 2014 New York

"Accessibility Standards"):

*Exterior Route*

A.  No accessible route is provided from the public sidewalk to Tramway Diner's public entrance.
*Defendants fail to provide that at least one accessible route shall be provided within the site from public sidewalks to the accessible entrance served by the sidewalk. 1991 ADA § 4.1.2(1); 2010 ADA § 206.2.1; 1968 BC§ 27-292.5(b); 2008 BC § 1104.1; 2014 BC § 1104.1; and 2022 BC § 1104.1.*

B.  The walking surface from the public sidewalk adjoining 1079 1st Ave to Tramway Diner's public entrance has a cross slope greater than 1:50.
*Defendants fail to provide that walking surfaces which are part of an accessible route have cross slopes no greater than 1:50. 1991 ADA § 4.3.7; 1968 Ref Std § 4.3.7.*

C.  The walking surface from the public sidewalk adjoining 1079 1st Ave to Tramway Diner's public entrance has a cross slope greater than 1:48.
*Defendants fail to provide that walking surfaces which are part of an accessible route have cross slopes no greater than 1:48. 2010 ADA § 403.3; 2008 Ref Std § 403.3; and 2014/2022 Ref Std § 403.3.*

D.  The change in level greater than ½ inch high between the public sidewalk and Tramway Diner's public entrance is not treated with an accessible ramp.
*Defendants fail to provide that changes in level at accessible routes greater than 1/2-inch-high shall be overcome with a ramp that complies with 1991 ADA § 4.8 or an elevator, or platform lift. See 1991 ADA § 4.3.8; and 1968 Ref Std § 4.3.8.*
*Defendants fail to provide that* changes *in level at accessible routes greater than 1/2-inch-high shall be treated with a ramp that complies with 2010 ADA § 405. See 2010 ADA § 303.4; 2008 Ref Std § 303.3; and 2014/2022 Ref Std § 303.4.*

E.  The ramp at the exterior of the public entrance has a running slope greater than 1:12.
*Defendants fail to provide that portions of an accessible route with a running slope greater than 1:20 are treated as ramps that comply with 1991 ADA § 4.8, See 1991 § 4.3.7; 2010 ADA § 402.2 and 403.3.*

F.  The ramp at the exterior of the public entrance does not have a handrails on both sides of the ramp.
*Defendants fail to provide handrail on both sides of the ramp. See 1991 ADA § 4.8.5; 2010 ADA § 505.3.*

---

City Building Code, N.Y.C. Admin. Code § 28-1101 *et seq*. and Appendix E (the "2014 BC"), inclusive of the technical standard for accessibility referenced in the 2014 BC, ICC A117.1-2009 (the "2014/2022 Ref Std);2 and (iv) the accessibility provisions of the 2022 New York City Building Code, N.Y.C. Admin. Code § 28-1101 *et seq*. and Appendix E (the "2022 BC"), inclusive of the technical standard for accessibility referenced in the 2022 BC, 2014/2022 Ref Std.

G.  The ramp at the exterior of the public entrance does not have a top landing with a clear length of 60 inches minimum.
Defendants *fail to provide a ramp with top and bottom landings that have a minimum clear length of 60 inches. See 1991 ADA § 4.8.4(2); and 2010 ADA § 405.7.3.*

H.  The ramp at the exterior of the public entrance does not have a top landing which provides for the minimum maneuvering clearances required at the pull side of the doorway.
*Defendants fail to provide that the top landing of the ramp provides the minimum pull-side maneuvering clearances at the public entrance doorway. See 1991 ADA § 4.13.6; and 2010 ADA §§ 404.2.4 and 405.7.5.*

*Public Entrance*

I.  Tramway Diner's public entrance is not accessible.
*Defendants fail to provide that at least 50% of the public entrances are accessible. 1991 ADA § 4.1.3(8)(a)(i).*
*Defendants fail to provide that at least 60% of the public entrances are accessible. 2010 ADA § 206.4.1.*
*Defendants fail to provide that primary entrances/public entrances are accessible. 1968 BC § 27-292.5(a); 2008 BC § 1105.1; 2014 BC § 1105.1; and 2022 BC § BC 1105.1.*

J.  No signage identifies an accessible public entrance (if Defendants assert they provide an accessible public entrance).
*Defendants fail to display signage (marked with the International Symbol of Accessibility or otherwise) that identifies an accessible entrance. 1991 ADA §§ 4.1.2(7)(c); 4.1.3(8)(d); and 4.1.6(1)(h); 2010 ADA § 216.6; 1968 BC § 27- 292.18; 2008 BC § 1110; 2014 BC §§ 1101.3.4 and 1110; and 2022 BC §§ 1101.3.4 and 1111.1.*

K.  No directional signage at the inaccessible public entrance indicates the location of an accessible public entrance (to the extent Defendants claim they provide an accessible entrance).
*Defendants do not provide and display signage at the inaccessible public entrance (marked with the International Symbol of Accessibility or otherwise) that indicates the location of an accessible public entrance. 1991 ADA §§ 4.1.6(1)(h) and 4.1.3(8)(d); and 2010 ADA Standards § 216.6.*
*Defendants fail to provide directional signage at necessary locations. 1968 BC § 27-292.18(b).*
*Defendants fail to provide directional signage by the inaccessible public entrance indicating the route to the nearest accessible public entrance. 2008 BC § 1110.2; 2014 BC §§ 1101.3.3; and 1110.2; and 2022 BC §§ 1101.3.3 and 1111.2.*

L.  The minimum required level and clear maneuvering area at the exterior of the public entrance door (pull side approach) is not provided. `
*Defendants fail to provide that floor or ground surface within required maneuvering clearances at doors shall have slopes not steeper than 1:48 (2.0%) and changes in level are not permitted. 60 inches perpendicular to the door for 18 inches parallel to the door beyond the latch is required for a forward approach to the pull side of a door, or 54 inches perpendicular to the door for 24 inches parallel to the door beyond the latch is required for a latch approach to the pull side of a door. See 1991 ADA § 4.13.6;*

13

*2010 ADA § 404.2.4; 1968 Ref Std § 4.13.6; 2008 Ref Std § 404.2.3; and 2014/2022 Ref Std § 404.2.3.*

M. The area required for maneuvering clearance at the exterior side of the entrance doorway is not level, as it has a running slope greater than 5%.
*Defendants fail to provide that the minimum required maneuvering clearance area does not contain any slope that exceeds 1:50. 1991 ADA § 4.3.7*
*Defendants fail to provide that the minimum required maneuvering clearance area does not contain any slope that exceeds 1:48. 2010 ADA § 404.2.4.4; 1968 Ref Std § 4.13.6; 2008 Ref Std § 404.2.3.5; and 2014/2022 Ref Std § 404.2.3.1*

N. The required maneuvering clearance of 18 inches parallel to the door required for a forward approach to the pull side of a door is not provided.
*Defendants fail to provide that floor or ground surface within required maneuvering clearances at doors of 18 inches parallel to the door beyond the latch is level and clear. See 1991 ADA § 4.13.6; 2010 ADA § 404.2.4; 1968 Ref Std § 4.13.6; 2008 Ref Std § 404.2.3; and 2014/2022 Ref Std § 404.2.3.*

O. The public entrance, which also serves as the exit, is not accessible for the reasons described above.
*Defendants fail to provide accessible means of egress in the number required by the code.  See 1991 ADA § 4.1.3(9); 2010 ADA § 207.1; 1968 BC §§ 27-292.1 and 27-357(d); 2008 BC § 1007.1; 2014 BC § 1007.1; and 2022 BC §1009.1.*

*Dining Surfaces*

P. Defendants fail to provide the minimum required number of accessible dining surfaces.
*Where dining surfaces for the consumption of food or drink are provided, at least 10 percent of the total number of seating and standing spaces, but not less than one, of each type of dining surfaces shall be accessible and be distributed throughout the facility and located on a level accessed by an accessible route.  See 2022 BC § 1108.2.9.1.*
*Defendants fail to provide that at least 5% of the dining surfaces provided to customers are accessible. See 1991 ADA § 5.1; 2010 ADA § 226.1; 1968 BC § 27-292.10(a)(3); 2008 BC § 1109.11; and 2014 BC § 1109.10.*

Q. Accessible dining surfaces are not identified by the International Symbol of Accessibility (to the extent Defendants claim they provide accessible dining surfaces.
*Defendants fail to provide that accessible seating shall be identified by the International Symbol of Accessibility. See 2008 BC § 1110.1(9); 2014 BC § 1110.1(11); and 2022 BC § 1111.1(12).*

R. Defendants fail to disperse accessible dining surfaces within the Tramway Diner premises (to the extent Defendants claim they provide accessible dining surfaces).
*Defendants fail to provide that accessible dining surfaces shall be dispersed throughout the space or facility containing dining surfaces. See 1991 ADA § 5.1 and 2010 ADA § 226.2.*

S. The exterior and interior dining tables do not have the required knee and toe clearances required for a forward approach to dining surfaces as the required clear spaces are obstructed by chairs, posts, and table legs.
*Defendants fail to provide (due to chairs, table pedestals or table legs) a clear floor space of 30 inches by 48 inches positioned for a forward approach and the required knee and toe clearance*

*at accessible work surfaces and/or table surfaces. See 1991 ADA § 4.32.2; 2010 ADA § 902.2; 1968 Ref Std § 4.30.2; 2008 Ref Std § 902.2; and 2014/2022 Ref Std § 902.2.*

T.  The minimum required area for wheelchairs are not provided at the end of bench seating at tables with booth dining.
*Defendants fail to provide minimum clear ground or floor spaces positioned at the end of the bench seat and parallel to the short axis of the bench.  See 2010 ADA § 903; 1968 Ref. Std § 4.30; 2008 Ref. Std § 903; 2014/2022 Ref. Std § 903.*
*Defendants fail to provide minimum clear ground or floor spaces.  See 1991 ADA §§ 4.32 and 4.33.*

U.  There are no wheelchair dining surfaces at the bar or window dining counters.
*Where seating is provided at dining or drinking counters, at least one 60 inch (1524 mm) long portion of the counter shall be provided with two accessible seating spaces. See 2022 BC § 1108.2.9.2.*
*Where dining surfaces for the consumption of food or drink are provided, at least 10 percent of the total number of seating and standing spaces, but not less than one, of each type of dining surfaces shall be accessible and be distributed throughout the facility and located on a level accessed by an accessible route.  See 2022 BC § 1108.2.9.1.*
*Defendants fail to provide that at least 5% of the dining surfaces provided to customers are accessible. See 1991 ADA § 5.1; 2010 ADA § 226.1; 1968 BC § 27-292.10(a)(3); 2008 BC § 1109.11; and 2014 BC § 1109.10.*

V.  The bar dining and window dining counter tops exceed 34 inches in height.
*The tops of accessible dining surfaces shall be 28 inches minimum and 34 inches maximum above the finish floor.  See 1991 ADA § 4.32.4; 2010 ADA § 902.3; and 2022 BC § 902.4*

W. The bar counter has a footrest and a base that obstruct knee and toe clearances required for a forward approach to the seating.
*Defendants fail to provide (due to chairs, table pedestals, table legs and/or a base) a clear floor space of 30 inches by 48 inches positioned for a forward approach and the required knee and toe clearance at accessible work surfaces and/or table surfaces. See 1991 ADA § 4.32.2; and 2010 ADA § 902.2.*

X.  The window counter does not have the minimum required knee and toe clearances required for a forward approach to the seating.
*Defendants fail to provide a clear floor space of 30 inches by 48 inches positioned for a forward approach and the required knee and toe clearance at accessible work surfaces and/or table surfaces. See 1991 ADA § 4.32.2; and 2010 ADA § 902.2.*

*Restrooms*

Y.  The toilet rooms are not accessible.
*Defendants fail to provide accessible toilet facilities. See 1991 ADA § 4.1.3(11); 2010 ADA § 213.1; 1968 BC § 27-292.12; 2008 BC § 1109.2; 2014 BC § 1109.2; and 2022 BC § 1109.2.*

Z.   The toilet rooms are not of sufficient size to accommodate a wheelchair.
*Defendants fail to provide an accessible toilet room that allows a 180-degree turn.  See 1991 ADA §§ 4.22.3; and 4.2.3; 2010 ADA §§ 603.2.1 and 304.3; 1968 Ref Std § 4.17.3; 2008 Ref Std § 604.8.2 and 2014/2022 Ref Std § 604.9.2.*

AA.     Maneuvering clearances for pulling open the toilet room doors are not provided.
*Defendants fail to provide that floor or ground surface within required maneuvering clearances at doors shall have slopes not steeper than 1:48 (2.0%) and changes in level are not permitted. 60 inches perpendicular to the door for 18 inches parallel to the door beyond the latch is required for a forward approach to the pull side of a door, or 54 inches perpendicular to the door for 24 inches parallel to the door beyond the latch is required for a latch approach to the pull side of a door. See 1991 ADA § 4.13.6; 2010 ADA § 404.2.4; 1968 Ref Std § 4.13.6; 2008 Ref Std § 404.2.3; and 2014/2022 Ref Std § 404.2.3.*

97. Architectural barriers at Tramway Diner (which Plaintiff has been made aware of prior to filing his Complaint) include, but are not limited to, the following violations of the ADA Standards and the NYC Standards:

*Restrooms (continued)*

BB.     The toilets/water closet alcoves within the toilet rooms lack rear wall grab bars.
*Defendants fail to provide compliant rear wall grab bar.*
*Defendants fail to provide an accessible water closet with a rear wall grab bar that is 36 inches long minimum and extend from the centerline of the water closet 12 inches minimum on one side and 24 inches minimum on the other side. See 1991 ADA § 4.16.4; 2010 ADA § 604.5.2; 1968 Ref Std § 4.16.4; 2008 Ref Std § 604.5.2; and 2014/2022 Ref Std § 604.5.2.*

CC.     The toilets/water closet alcoves in the toilet rooms lack compliant grab bars.
*Defendants fail to provide an accessible water closet/toilet with a horizontal side wall grab bar that is 42 inches long minimum starting no more than 12 inches in front of the rear wall, continuing forward to at least 54 inches from the rear wall. See 1991 ADA § 4.16.4; 2010 ADA § 604.5.2; 1968 Ref Std § 4.16.4; 2008 Ref Std § 604.5.2; an*d 2014/2022 Ref Std § 604.5.2.

DD.     The lavatories in the toilet rooms lack protected hot water and drain pipes.
*Defendants fail to provide accessible lavatories and/or sinks with water supply and drain pipes that are insulated or otherwise configured to protect against contact. See 1991 ADA §§ 4.19.4 and 4.24.6; 2010 ADA § 606.5; 1968 Ref Std § 4.19.4; 2008 Ref Std § 606.6; and 2014/2022 Ref Std § 606.6.*

98. A full inspection of Tramway Diner will reveal the existence of other barriers to access.

99. To properly remedy Defendants' unlawful discrimination and avoid piecemeal litigation,

Plaintiff requires a full inspection of Tramway Diner to catalogue the other architectural barriers at Tramway Diner and have Defendants remediate them.

100.   Plaintiff gives notice that he intends to amend his Complaint to include any violations of the Accessibility Standards or Human Rights Laws that are discovered during an inspection of Tramway Diner.

**FIRST CAUSE OF ACTION**
**(DISCRIMINATION IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT)**

101.   Plaintiff re-alleges and incorporates each allegation contained in the above paragraphs as if fully set forth herein.

102.   Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA. 42 U.S.C. § 12102; 28 C.F.R. § 36.105(a) and (b).

103.   As a direct and proximate result of Plaintiff's disability, Plaintiff requires a wheelchair for mobility and has restricted use of his arms and hands.

104.   "Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are 'public accommodations' subject to" the ADA. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(b).

105.   The ADA imposes joint and several liability on each of the owner of a building in which a place of public accommodation is located, the lessor of space in a building to a place of public accommodation, the lessee of space in a building for a place of public accommodation, and the owner or operator of the place of public accommodation. *See* 28 C.F.R. § 36.201(b).

106.   Therefore, pursuant to the ADA, each of the building owner, lessor, lessee, owner, and operator of Tramway Diner, a place of public accommodation is liable to Plaintiff. See Id.

107.    None of the Defendants can avoid liability under the ADA by transferring their obligations to comply with the ADA to another entity. 28 C.F.R. 36.201(b).

108.    Defendants continue to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to access Tramway Diner on the basis of disability.

109.    Defendants' policies and practices continue to subject Plaintiff to disparate treatment and disparate impact.

110.    By failing to comply with the law in effect for decades, Defendants have articulated to Plaintiff, as a disabled person, that he is neither desired nor welcome as a patron of Tramway Diner.

111.    Design and construction work was performed to build out Tramway Diner space as an eating and drinking establishment but the Alterations were not performed so that the space complies with the 1991 ADA Standards or the 2010 ADA Standards.

112.    Because Tramway Diner does not comply with the ADA Standards it is not readily accessible to and usable by Plaintiff due to his mobility disability. See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. § 12183(a)(1).

113.    Defendants discriminate against Plaintiff in violation of the ADA as they built a place of public accommodation that is not accessible to Plaintiff based on disability. *See* 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. § 12183(a)(1).

114.    Defendants fail to provide an integrated and equal setting for the disabled at Tramway Diner in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

115.    In violation of 28 C.F.R. §§ 36.402 and 36.406 and 42 U.S.C. §12183(a)(2), Alterations were not performed so the Tramway Diner's space is compliant with the ADA Standards to the maximum extent feasible.

116.    Defendants failed to provide "readily accessible and usable" paths of travel to the altered primary function areas of Tramway Diner in violation of 28 C.F.R. § 36.403.

117.    Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access at Tramway Diner in violation of 28 C.F.R. § 36.304.

118.    It has been and remains readily achievable for Defendants to make Tramway Diner accessible by complying with the ADA Standards.

119.    By failing to remove the barriers to access where it is readily achievable to do so, Defendants have discriminated against Plaintiff on the basis of disability in violation of 42 U.S.C. § 12182(a), § 12182(b)(2)(A)(iv), and 28 C.F.R. § 36.304.

120.    Alternatively, To the extent Defendants allege that the removal of any of the barriers to access was, and remains, not readily achievable, Defendants have violated the ADA by failing to provide Plaintiff with reasonable alternatives to barrier removal. 28 C.F.R. § 36.305.

121.    Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et seq.*, and 28 C.F.R § 36.101 *et seq.*

122.    Defendants continue to discriminate against Plaintiff in violation of the ADA by maintaining a place of public accommodation that is not compliant with the ADA Standards, and therefore not accessible.

**SECOND CAUSE OF ACTION**
**DISCRIMINATION IN VIOLATION OF**
**THE NEW YORK HUMAN RIGHTS LAW**

123.    Plaintiff realleges and incorporates each allegation contained in the above paragraphs as if fully set forth herein.

124.    Plaintiff suffers from various medical conditions that separately and together prevent

him from exercising the life activities of both walking and body motion range.

125.    Plaintiff therefore suffers from a disability within the meaning of the Executive Law § 292(21).

126.    In 2019, the New York State legislature enacted legislation which amended the construction provision of the State HRL, Executive Law § 300, to require that the protections and provisions be liberally construed. NY Session Law 2019, ch 160.

127.    The 2019 amendment requires the State HRL's provisions and the protections it provides to be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed". Executive Law § 300.

128.    By amending the Executive Law § 300 to mirror the text of the New York City Local Civil Rights Restoration Act of 2005, Local Law 85 of 2005, the New York State legislature confirmed the legislative intent to abolish parallel construction between the State HRL and related Federal anti-discrimination laws.

129.    Defendants have and continue to subject Plaintiff to disparate treatment by denying him equal opportunity to use their place of public accommodation all because he is disabled.

130.    Defendants discriminated against Plaintiff in violation of State HRL, Executive Law § 296(2), by creating or maintaining an inaccessible place of public accommodation.

131.    Each of the Defendants have aided and abetted others in committing disability discrimination.

132.    Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of State HRL, Executive Law § 296(2)(c)(iii).

133. In the alternative, Defendants have failed to provide Plaintiff with reasonable alternatives to barrier removal as required in violation of State HRL, Executive Law § 296(2)(c)(v).

134. It would be readily achievable (as defined by the State HRL) to make Defendants' place of public accommodation fully accessible.

135. It would not impose an undue hardship or an undue burden on Defendants to make their place of public accommodation fully accessible.

136. As a direct and proximate result of Defendants' unlawful discrimination in violation of State HRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

137. Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## DISCRIMINATION IN VIOLATION OF
## THE NEW YORK CITY HUMAN RIGHTS LAW

138. Plaintiff re-alleges and incorporates each allegation contained in the above paragraphs as if fully set forth herein.

139. Plaintiff suffers from medical conditions that separately and together impair Plaintiff's bodily systems - in particular, the life activity of both walking and body motion range.

140. Due to his impaired bodily functions, Plaintiff has a disability within the meaning of the City HRL. N.Y.C. Admin. Code § 8-102.

**Section 8-107(4)(a)(1)(a) Violations: Denial of Equal Opportunity.**

141. The City HRL guarantees the right of all individuals, regardless of disability, to equal opportunity (*i.e.*, equivalent access) to places of public accommodation.

142.    "Equivalent access, in the words of the City HRL, is the opportunity to have "full and equal enjoyment, on equal terms and conditions" to the accommodations, advantages, services, facilities, and privileges of a place of public accommodation. N.Y.C. Admin. Code § 8-107(4).

143.    Defendants engage in an unlawful discriminatory practice prohibited by the City HRL as they created and maintain a place of public accommodation, Tramway Diner, which is not accessible to Plaintiff due to disability. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

144.    Defendants are also liable for the conduct of their employees and agents which resulted in the creation and maintenance of a place of public accommodation which is not accessible. N.Y.C. Admin. Code § 8-107(13).

145.    Because Defendants created and maintain a place of public accommodation that is not accessible to Plaintiff due to disability, Defendants directly and indirectly "refuse, withhold from, or deny" Plaintiff equal opportunity to enjoy the "accommodations, advantages, services, facilities or privileges" of Tramway Diner due to his disability.

146.    Defendants' policies and procedures inclusive of their policies of refusing to expend funds to design, create, and maintain an accessible place of public accommodation is a discriminatory practice in violation of City HRL. N.Y.C. Admin. Code § 8-107 (4).

147.    Defendants' failure to construct and maintain an accessible entrance from the public sidewalk to Tramway Diner constitutes disability discrimination in a violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a); See also N.Y.C. Admin. Code § 19-152 and § 7-210.

148.    Defendants' failure to provide an accessible place of public accommodation and consequent denial of equal opportunity to Plaintiff constitutes an ongoing continuous pattern and practice of disability discrimination. in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

149.    Defendants discriminate against Plaintiff as they subject him to disparate impact in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4).

150.    Defendants subject Plaintiff to disparate impact as they directly and indirectly deny Plaintiff equal opportunity to enjoy the accommodations, advantages, facilities, and privileges of Tramway Diner because of his disability.

151.    Defendants' policies or practices, "whether neutral on their face and [or] neutral in intent" result in a disparate impact to the detriment of the individuals with mobility disabilities, the protected class of which Plaintiff is a member. *See* N.Y.C Admin. Code § 8-107(17); and *Levin v Yeshiva Univ.*, 96 NY2d 484, 489(2001).

152.    Defendants' failure to comply with the NYC Building Code as well as their failure to expend funds to upgrade and alter Tramway Diner to remove obsolete features such as stepped entrances, are policies and practices that have a significantly adverse and disproportionate impact on persons with mobility disabilities, including Plaintiff.

153.    Because the result of Defendants' policies and practices is a place of public accommodation that is not accessible to people with mobility disabilities, Plaintiff has demonstrated that Defendants' policy or practice has a disproportionately negative impact on the disabled including Plaintiff.

**Section 8-107(15) Violations: Failure to Provide Reasonable Accommodations.**

154.    Defendants also discriminate against Plaintiff in violation of the City HRL as they have not made reasonable accommodations necessary for persons with mobility disabilities that use wheelchairs. N.Y.C. Admin. Code § 8-107(15)(a).

155.    Defendants' failure to make reasonable accommodations include their failure to remove the architectural barriers to access detailed herein so that individuals with mobility

23

disabilities that use wheelchairs, including Plaintiff, have equal opportunity to enjoy what Defendants offer at Tramway Diner.

156.    Defendants have known, or should have known, that members of the public, which includes current and prospective patrons of Tramway Diner such as Plaintiff, have mobility disabilities that require the use of wheelchairs to ambulate.

157.    Defendants have known, or should have known, reasonable accommodations are necessary for persons with mobility disabilities that use wheelchairs to have the equal opportunity to enjoy what Defendants offer at their place of public accommodation, Tramway Diner.

158.    To the extent Defendants were not obligated to have altered or maintained Tramway Diner so that the architectural barriers identified in this Complaint do not exist it would not cause undue hardship in the conduct of their business to remove the architectural barriers detailed in this Complaint as a reasonable accommodation for persons with mobility disabilities that use wheelchairs.

159.    Defendants cannot demonstrate that it would cause undue hardship in the conduct of their respective businesses to remove the architectural barriers to access detailed herein as a reasonable accommodation for persons with mobility disabilities that use wheelchairs.

160.    Defendants' failure to provide reasonable accommodations for persons with disability, inclusive of their failure to remove the barriers to access identified in herein, and Defendants' consequent denial of equal opportunity to Plaintiff, constitutes an ongoing continuous pattern and practice of disability discrimination in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

**Section 8-130: The City HRL's Construction and Maximally Protective Role.**

161. To further the City HRL's "uniquely broad remedial purposes" (Local Law No. 85 (2005) of City of New York § 7) and to ensure that it the law is "maximally protective of civil rights in all circumstances" (Local Law No. 35 (2016) of City of New York § 1), the New York City Council amended the City HRL's Construction provision, N.Y.C. Admin. Code § 8-130, in 2005 and 2016. Local Law 85 (2005), and Local Law 35 (2016).

162. The 2005 and 2016 amendments confirm that the City HRL is not coextensive with federal or state civil rights laws "regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably worded to provisions of this title, [the City HRL,] have been so construed". N.Y.C. Admin. Code § 8-130(a), as amended by Local Law 85 § 7 and Local Law 35 § 2.

163. The 2005 and 2016 amendments instead provide that the City HRL's protections are cumulative to the protections provided by federal or state civil rights laws, as the City HRL must "be interpreted liberally and independently of similar federal and state provisions" to accomplish the City HRL's uniquely broad and remedial purposes "as one of the most expansive and comprehensive human rights laws in the nation". Rep of Governmental Affairs Div, Comm on Civ Rights at 6 and 8, March 8, 2016, Local Law Bill Jacket, Local Law No. 35 (2016) of City of NY (Adding to Local Law 85 § 1's already explicit language which provided that the obligations imposed on entities subject to the City HRL by "similarly worded provisions of federal and state civil rights laws [are] as a floor below which the City's Human Rights law cannot fall.").

164. The 2016 Amendments to the City HRL additionally direct that "[e]xceptions to and exemptions from the provisions of this title [(the City HRL)] shall be construed narrowly in order to maximize deterrence of discriminatory conduct". N.Y.C. Admin. Code § 8-130(b), as amended by Local Law 35 (2016) § 2.

25

165.    Due to the above-referenced amendments, the City HRL provides significantly greater protections to its protected classes "in all circumstances" than what the ADA and the State HRL (Title 15 of the Executive Law) provide to persons in the same protected classes.

166.    Defendants' conduct is therefore subject to a markedly stricter standard under the City HRL than under Federal and state anti-discrimination law.

167.    Defendants' liability under the City HRL for their conduct alleged herein must be determined separately and independently from their liability under the ADA or State HRL, to the extent that Defendants escape liability under the ADA or State HRL. N.Y.C. Admin. Code § 8-130, as amended by Local Law 85 and Local Law 35.

168.    Conversely to the extent that Defendants' conduct alleged herein violates the ADA or State HRL, Defendants automatically violate the City HRL.

169.    Therefore, Defendants' violations of the ADA, the ADA Standards, and the State HRL alleged herein constitute discrimination under the City HRL.

170.    Defendants continue to discriminate based on disability in violation of the City HRL (N.Y.C. Admin. Code § 8-107(4)) due to their ongoing violations of the ADA, the ADA Standards, and the State HRL alleged herein.

171.    The City HRL's stricter standards also apply in situations where the ADA and the State HRL have provisions that are comparably worded to the City HRL's provisions. N.Y.C. Admin. Code § 8-130.

172.    Defendants must therefore provide an accessible place of public accommodation, regardless of their obligation to provide accessibility under similarly worded provisions of the ADA or the State HRL.

**Section 8-107(6) Violations: Aid and Abet Discrimination.**

173. In violation of the City HRL, Defendants have and continue to, aid and abet, incite, compel, or coerce each other in each of the other Defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation, all because of disability. N.Y.C. Admin. Code § 8-107(6).

174. Each of the Defendants have aided and abetted others in committing disability discrimination.

175. Defendants' conduct constitutes an ongoing and continuous violation of the City HRL.

176. Unless Defendants are enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law.

177. Plaintiff will suffer irreparable harm by being denied the accommodations, advantages, facilities, or privileges of the Defendants' place of public accommodation.

178. As a direct and proximate result of Defendants' unlawful discrimination in violation of the City HRL, Plaintiff has suffered, and continues to suffer emotional distress, including humiliation, stress, and embarrassment.

179. Upon information and belief, Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to Plaintiff's rights under the City HRL.

180. By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

181. Defendants engaged in discrimination with willful or wanton negligence, and/or

recklessness, and/or a conscious disregard of the rights of others and/or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages pursuant to the City HRL N.Y.C. Admin. Code § 8-502.

182.   By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by diverting monies they should have used to provide an accessible space to themselves.

183.   By refusing to make their place of public accommodation accessible, Defendants have unlawfully benefited from their discriminatory conduct by collecting revenue from a non-compliant space.

184.   Defendants continue to take for themselves funds they are required to spend to remediate Tramway Diner so that it is accessible.

185.   The amounts Defendants diverted to themselves, and the unlawful revenues they gained must be disgorged.

186.   Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK CIVIL RIGHTS LAW)

187.   Plaintiff re-alleges and incorporates each allegation contained in the above paragraphs as if fully set forth herein.

188.   The CRL guarantees the rights of all persons in New York to "full and equal accommodations, advantages, facilities and privileges of any places of public accommodation[]…subject only to the conditions and limitations established by law and applicable alike to all persons." N.Y. Civ. Rights Law § 40.

189.   The CRL therefore provides that public accommodations cannot "directly or

indirectly refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges" of their place of public accommodation. *Id*.

190.    The CRL also guarantees all persons in New York "equal protection of the laws of [New York and the City of New York] and specifically protects individual with disabilities from "any discrimination in his or her civil rights … by any other person or by any firm, corporation or institution". Id. at § 40-c.

191.    Those that discriminate against an individual with a disability are subject to a monetary penalty of $100 - $500 per offense, recoverable by the individual that suffered the discrimination pursuant to the CRL. *Id*. at § 40-d.

192.    Defendants discriminated against Plaintiff pursuant to the State HRL and the City HRL.

193.    Defendants denied Plaintiff equivalent access to Tramway Diner, causing Plaintiff prior injuries, direct and deterrent, on multiple occasions as set forth in this Complaint.

194.    Defendants continue to deny Plaintiff equivalent access to Tramway Diner inflicting ongoing deterrent injury upon Plaintiff as set forth in this Complaint.

195.    Plaintiff is entitled to recover the monetary penalty prescribed by CRL § 40-d for each and every discriminatory violation under the State HRL and the City HRL.

196.    As required by CRL § 40-d, notice of this action has been served upon the New York Attorney General.

## INJUNCTIVE RELIEF

197.    Plaintiff will continue to experience unlawful discrimination from Defendants' failure to comply with the above-mentioned laws. Therefore, injunctive relief which Orders Defendants to alter and modify their place of public accommodation to comply with the Accessibility

Standards and the Human Rights Laws, is necessary.

198.    Injunctive relief is necessary to make Defendants' place of public accommodation readily accessible to and usable by Plaintiff as an individual with a disability that uses a wheelchair in accordance with the above-mentioned laws.

199.    Injunctive relief is also necessary to order Defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA and the City HRL.

## JURY DEMAND

200.    Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a judgment against the Defendants, jointly and severally, in favor of Plaintiff that contains the following relief:

A.  Enter declaratory judgment declaring that Defendants have violated the ADA inclusive of its implementing regulations and the City HRL, and declaring the rights of Plaintiff as to Defendants' place of public accommodation, and Defendants' policies, practices, and procedures;

B.  Issue a permanent injunction ordering Defendants to remediate Tramway Diner so that it is accessible to wheelchair users as required by the ADA, State HRL, and City HRL, which includes remediating all violations of the 2010 Standard and the NYC Standards at Tramway Diner;

C.  Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and that Defendants will not repeat their unlawful practices, acts and omissions;

D.  Award Plaintiff compensatory damages from Defendants' violations of the City HRL;

E.  Award Plaintiff punitive damages to punish and deter the Defendants for their violations of the City HRL;

F.  Award Plaintiff the monetary penalties for each act of discrimination in violation of the State HRL and City HRL, per defendant, pursuant to New York State Civil Rights Law § 40-d;

G.  Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the ADA and City HRL; and

H.  For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: March 16, 2026

Respectfully submitted,

**HANSKI PARTNERS LLC**

By:/s/ *Adam S. Hanski*
Adam S. Hanski, Esq.
Attorneys for Plaintiff
4 International Dr, Ste 110
Rye Brook, NY 10573
Telephone: (212) 248-7400
Email: ash@disabilityrightsny.com

31